**HANDGARDS, INC., a corporation, Plaintiff,**

v.

**JOHNSON & JOHNSON, a corporation, and Ethicon, Inc., a corporation, Defendants.**

**No. C–49451 WHO.**

United States District Court, N. D. California.

Sept. 18, 1975.

Blecher, Collins & Hoecker, Maxwell M. Blecher, Joel R. Bennett, Los Angeles, Cal., for plaintiff.

David F. Dobbins, George S. Frazza, New York City, Robert M. Dunne, Dunne, Phelps & Mills, San Francisco, Cal., for defendants.

## ORDER

ORRICK, District Judge.

This is an antitrust action in which plaintiff claims that defendants have at-tempted to monopolize the disposable plastic glove industry. On February 11, 1975, plaintiff moved, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel defendants to produce certain documents which defendants claimed were protected from disclosure under the attorney-client privilege.[1] By Memorandum Opinion and Order of April 16, 1975, defendants were ordered to submit the contested documents to the Court for an *in camera* inspection. Defendants complied by submitting the documents listed on defendants' Schedule B.

The documents submitted for inspection are letters and other communications transmitted among and between defendants' counsel and other company officials. For the most part, the documents relate to the negotiation and interpretation of various provisions in license agreements pertaining to foreign patents in the disposable plastic glove field, including the Orsini patent relevant to the instant case. Other documents contain evaluations, or requests for evaluations, of the legal sufficiency of foreign patents and the possible infringement of those patents by defendants or the possible infringement by other parties of patents owned by the defendants.

Defendants assert that there is no correspondence between attorneys and third parties among the contested documents; any such material was made available to plaintiff subsequent to the filing of the motion.

█ Plaintiff argues that certain actions of the defendants have waived any privilege with respect to the documents

---

1. Plaintiff's motion also sought the production of certain documents then in the possession of James Dooley. The affidavit of David Dobbins, submitted in connection with defendants' Memorandum in Opposition to Plaintiff's Motion to Compel, indicates that the parties reached an agreement as to the production of these documents. Therefore, the part of plaintiff's motion relating to these documents is not now before the Court.

Additionally, plaintiff sought correspondence to or from certain named individuals (Orsini, Wisch, Szabados and Lemonnier). Defendants state that these documents are not being withheld (Dobbins' Affidavit, p. 2). As to these documents, plaintiff's motion is denied.

here in issue. This contention is without merit. The previous production of documents containing communications between attorneys employed by the defendants and third parties is not a waiver of the attorney-client privilege with regard to communications between company officials and counsel. Defendants have not totally waived the attorney-client privilege by bringing the patent infringement suits which preceded this action. *U. S. Industries, Inc. v. Norton Company,* 174 United States Patents Quarterly 513 (N.D.N.Y.1972), relied on by the plaintiff, is inapposite. Nor have they made any specific disclosures during the course of this litigation which could be deemed a blanket waiver. See *American Optical Corporation v. Medtronic, Inc.,* 56 F.R.D. 426, 431–432 (D. Mass.1972).

Plaintiff suggests that defendants' counsel were functioning as business advisors or technical personnel rather than as lawyers when they engaged in the contested communications and, therefore, the attorney-client privilege does not pertain to the documents.

■ The general principles governing the application of the attorney-client privilege were enunciated by Judge Wyzanski in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–359 (D.Mass.1950). The privilege applies only if the asserted holder of the privilege is or sought to be a client; the person to whom the communication was made is a member of the bar or his subordinate and in connection with the communication is acting as a lawyer; the communication relates to a fact which the attorney was informed of by his client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding, and not for the purpose of committing a crime or tort; and, finally, the privilege has been claimed and not waived by the client.

These qualifications were applied to patent cases in *Zenith Radio Corp. v. Radio Corporation of America,* 121 F. Supp. 792, 794 (D.Del.1954), where the court held the term "acting as a lawyer" to be the decisive factor in deciding the question of privilege. The court stated:

" 'Acting as a lawyer' encompasses the whole orbit of legal functions. When he acts as an advisor, the attorney must give predominantly legal advice to retain his client's privilege of non-disclosure, not solely, or even largely, business advice. At this stage, attorney-employees of the patent departments * * * may or may not qualify in specific instances. They do, for example, when in specific matters they are engaged in applying rules of law to facts known only to themselves and other employees of their client-companies, and in preparing cases for and prosecuting appeals in the Court of Customs and Patent Appeals and other like courts of record. They do not 'act as lawyers' when not primarily engaged in legal activities; when largely concerned with technical aspects of a business or engineering character, or competitive considerations in their companies' constant race for patent proficiency, or the scope of public patents, or even the general application of patent law to developments of their companies and competitors; when making initial office preparatory determinations of patentability based on inventor's information, prior art, or legal tests for invention and novelty; when drafting or comparing patent specifications and claims; when preparing the application for letters patent or amendments thereto and prosecuting same in the Patent Office; when handling interference proceedings in the Patent Office concerning patent applications." 121 F.Supp. at 794.

The *Zenith* test has been more recently applied to deny the protection of the attorney-client privilege to documents

prepared by patent counsel containing a mere list of patents for information sake, a listing of the prior art in the field, and an infringement study relating to the alleged patents of the plaintiff and defendant involved in a patent suit. *American Cyanamid Company v. Hercules Powder Company,* 211 F.Supp. 85, 89–90 (D.Del.1962). Similarly, in *Paper Converting Machine Co. v. FMC Corp.,* 215 F.Supp. 249, 251–252 (E.D. Wis.1963), the court held that a letter from a corporate employee to the corporate patent counsel which did not ask the counsel to apply rules of law to facts known only to the client, but rather, was a request to make an initial office preparatory determination as to a patent's validity was not privileged; nor was correspondence between the corporation's patent counsel and others relating to a patentability and infringement search. See also, *Underwater Storage, Inc. v. United States Rubber Co.,* 314 F. Supp. 546 (D.D.C.1970).

■ Applying the above-mentioned principles, I have determined that the following documents on defendants' Schedule B submitted for *in camera* inspection pertain primarily to the undertaking of patent and infringement studies or contain discussions of technical and business considerations. As such they are not protected by the attorney-client privilege since they were not transmitted for the purpose of giving or receiving legal advice.

■ All other documents referred to on Schedule B relate to the negotiation and interpretation of licensing agreements between defendants and others. These documents fall within the ambit of the attorney-client privilege, which extends to communications calling for or expressing legal opinions or advice concerning business negotiations as well as documents prepared with an "eye toward litigation". *American Optical Corporation v. Medtronic, Inc., supra.*

■ Defendants resist any discovery, claiming that all the documents should be covered under the attorney-client privilege. The *American Optical Corporation* case lends support to their position. However, I believe that the less expansive view of the scope of the privilege expressed in the *Zenith* line of cases is more in keeping with the policy of full disclosure under the liberal discovery procedures of the Federal Rules of Civil Procedure. Fuller disclosure is particularly appropriate in situations where the privilege is claimed by in-house counsel, who "could be converted into a privileged sanctuary for corporate records" with relative ease. *America Cyanamid Company v. Hercules Powder Company, supra,* at 89–90, n. 20.

■ Defendants also question the relevance of the documents, since they pertain to foreign patents, not proceedings in regard to U. S. patent applications. However, the course of conduct of the defendants abroad in acquiring patents does bear on their conduct in the United States. Therefore, the documents are relevant to the instant proceeding.

Finally, plaintiff has asserted that none of the documents are privileged because defendants have perpetrated a fraud upon the Patent Office in the procurement of its Gerard and Orsini patents. However, plaintiff's claim in this regard must fail, since plaintiff has failed to establish a *prima facie* case that the contested documents were part of such an alleged scheme. See *Jack Winter, Inc. v. Koratron Co.,* 50 F.R.D. 225, 229 (N.D.Cal.1970).

Accordingly, it is hereby ordered that plaintiff's motion is granted as to those documents listed above. As to all other documents listed on defendants' Schedule B, plaintiff's motion is denied.