UNITED STATES of America,
Plaintiffs,

v.

George G. DAVIS, Gerald E. Lee, James H. Gilliland, P. Takis Veliotis, and General Dynamics Corporation, Defendants.

No. 85 Civ. 6090 (KC).

United States District Court,
S.D. New York.

June 6, 1990.

Otto Obermaier, U.S. Atty., S.D.N.Y., by Nancy L. Savitt, Ellen B. Silverman and Beth A. Kaswan, New York City, for plaintiffs.

Jenner & Block by Nicholas D. Chabraja, David C. Bohan, Patricia Logue and David DeBruin, Chicago, Ill., Gubman, Sitomer, Goldfaden & Edlitz, P.C. by Robert I. Edlitz and Michael R. Klekman, Hollman & Byrne by Matthew L. Byrne, Anderson Kill Olick & Oshinsky by John Gross, Spengler Carlson Gubar Bodsky & Frischling, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

Currently pending before the Court are two motions to compel discovery, one by the Government and one by General Dynamics. The parties have had a series of discovery disputes in this complex and protracted action. The Government, claiming fraud and mistake of fact, has sued General Dynamics for rescission or reformation of subsidy contracts between General Dynamics and the United States Maritime Administration ("MARAD") and/or damages in connection with General Dynamics' breach of its contractual obligations under the subsidy contracts. More specifically, the Government claims that General Dynamics did not provide MARAD with current, complete or accurate information as to the cost of production and pricing of certain liquified natural gas ("LNG") carriers such that General Dynamics breached the subsidy contract, and is liable under the False Claims Act, 31 U.S.C. § 3729 *et seq.* The Government further alleges that the breach was so substantial as to taint the entire subsidy award such that the subsidy contracts should be rescinded or in the alternative, reformed with damages awarded to the United States. The full amount of the subsidies awarded was $79,889,110.

The motions currently pending before the Court concern only General Dynamics

and the Government. Two of the defendants, James H. Gilliland and P. Takis Veliotis, are fugitives from justice, having fled the United States after criminal investigations. Indictments are still pending in this district against these two defendants. Since the initiation of this action, defendant George Davis was tried and convicted in 1984 of, *inter alia,* making a false, fictitious or fraudulent claim to the Government, and has served his sentence. Defendant Lee, who also pleaded guilty, has died. The Government also pursued a criminal investigation against General Dynamics, in which General Dynamics cooperated and in which no indictment was ultimately issued. By this order, we will adjudicate both General Dynamics' Third Motion to Compel Production of Documents Withheld by the Government and the Government's Fourth Rule 37 Motion.

## I. General Dynamics' Third Motion to Compel Production of Documents Withheld by the Government

General Dynamics seeks four categories of documents: (1) the interview transcript of a key witness and party to the action, Takis Veliotis; (2) an "audit" by the Defense Contract Audit Agency; (3) the documents relating to the interview of Thomas Pross, then the government official charged with the duty of determining the reasonableness of the a defense contractor's costs; and (4) the "comparative data documents" relating to the cost estimates and price information for other similar or analogous vessels, both generated by and submitted to MARAD. The Government denies that it has an obligation to produce any of these documents for reasons which will be elaborated below.[1]

### A. *Veliotis Interviews*

■ The Government interviewed P. Takis Veliotis in 1984 and 1985. There is no information as to where these inter-

---

**1.** In addition, General Dynamics originally sought documents related to MARAD's internal review of General Dynamic's cost estimates and its determination that the price of the LNG vessels in issue was fair and reasonable. The Government, in response to the motion, and in an attempt to narrow the issues for resolution by us, produced the documents requested.

views took place—Veliotis resigned from General Dynamics in 1982 and fled the country. He was indicted in this district in 1983 for taking bribes from the Frigitemp Corporation and its successor, Intersystems Design and Technology Corporation ("IDT"). Since 1982, he has assertedly resided in Greece as a fugitive from justice. The Government has admitted that the transcript of the Veliotis interviews contain references to the cost estimates of the Lachmar vessels[2] which are directly relevant to the Government's False Claims Act cause of action. The Government has asserted that these interviews were conducted by FBI agents and Department of Justice Attorneys as a part of its criminal investigation of Veliotis' charges against General Dynamics. Accordingly, the Government claims that it does not have to produce the interview transcripts to General Dynamics, asserting that they relate to an on-going criminal investigation and that they are attorney work product. Both of the privileges asserted are qualified privileges—they must be balanced against General Dynamics' substantial need for the information. *See Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341–42 (D.C.Cir.1984) (law enforcement privilege is a qualified privilege); Fed.R. Civ.P. 26(b)(3) (work product privilege is a qualified privilege). The Government invokes the law enforcement privilege first, so we, too, will address the issues in that order.

■ The purpose of the law enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Department of Investigation*, 856 F.2d 481, 484 (2d Cir.1988). Assuming that these purposes are implicated by the government's invocation of the privi-

lege here, the Government concedes that the privilege may be overridden by General Dynamics' substantial need for the documents and its inability to obtain their substantial equivalent by other means. Government's Memorandum in Opposition to General Dynamics' Third Motion to Compel Production of Documents ("Govt. Main Memo.") at 15; *see Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D.Fla. 1980); *Kinoy v. Mitchell*, 67 F.R.D. 1, 11 (S.D.N.Y.1975).

The Government does not deny that Veliotis is a key figure in each of the Government's claims against General Dynamics. Furthermore, the Government admits that the materials were developed in the course of "the criminal investigation, conducted under Department of Justice supervision, into Veliotis' allegations of General Dynamics' wrongdoing." General Dynamics' Memorandum in Support of its Third Motion to Compel Production of Documents Withheld by the Government ("General Dynamics' Main Memo.") at 17, Attachment A at ¶¶ V–1, 2; Attachment O (Letter of B. Kaswan to D. DeBruin, dated March 25, 1988) at 2. Accordingly, it cannot be denied that the Government "embraced [Veliotis'] 1985 fraud allegations against General Dynamics in its Complaint." General Dynamics' Main Memo. at 18. Despite the fact that Veliotis' allegations are indeed a pivotal part of the case against General Dynamics and the fact that the Government, in its capacity as a civil plaintiff, concedes to utilizing its criminal investigatory file against General Dynamics in this suit, the Government asserts that it need not produce the interview transcripts on account of the law enforcement privilege. It further asserts that General Dynamics has not demonstrated that it has "no alternative means of obtaining the information sought," Govt. Main Memo. at 15–16, and thus, has not overcome the privilege.

First, we observe that had this been a criminal case, where the breadth of dis-

---

**2.** Lachmar is a partnership consisting of Pantheon, Inc., the wholly owned subsidiary of General Dynamics, and the wholly owned subsidiaries of Panhandle Eastern Pipe Line Co. and Moore–McCormack Resources, Inc. Third Amended

Complaint at ¶ 18. Lachmar, as the purchaser of two of the LNG carriers (the "Lachmar vessels") and General Dynamics as the Lachmar vessels' contractor applied to MARAD for a Construction Differential Subsidy. *Id.* at ¶ 20.

covery is much more limited, General Dynamics undoubtedly would have been entitled to the interview transcripts in question. Thus, we see no reason why in this civil case against it General Dynamics should be entitled to any less discovery. Second, were we to accept the Government's argument as to what exactly General Dynamics must show before demonstrating that there are no alternative means of obtaining the information, we would essentially be requiring General Dynamics to perform futile acts. The Government's position is that we must require General Dynamics to attempt to get the information from Veliotis in Greece and that this attempt must be unsuccessful before the Government should be compelled to produce the transcripts. This position is untenable in light of the hostile, to say the least, relationship between Veliotis and General Dynamics. It is rendered even more doubtful by the knowledge that at the deposition noticed by the Government in this case, Veliotis chose not to cooperate further with the Government, instead, invoking his fifth amendment right against self-incrimination. We have no reason to believe Veliotis would waive this privilege were General Dynamics actually to succeed in getting him to attend a deposition. Finally, the Government does not really dispute that General Dynamics cannot obtain the substantial equivalent of the information Veliotis provided the Government from a source other than the Government or Veliotis. Accordingly, we conclude that General Dynamics has made the requisite showing of substantial need and lack of substantial equivalent to override the claimed "law enforcement" privilege.

As a fallback position (and we observe one which the Government has not carefully articulated), the Government claims that the interview transcripts are privileged as work product. The same standard, that of substantial need, must be met in order to overcome the invocation of this privilege. Fed.R.Civ.P. 26(b)(3); J. Moore & J. Lucas, *Moore's Federal Practice* ¶¶ 26.64[2] and [3.–1] ("*Moore's* "). As we explained above, this standard has been met here. Furthermore, the Government has not indicated whether the interviews are "factual work product" or "opinion work product," *see Moore's* ¶¶ 26.64[2] at 26–361—362, although we are inclined to believe that they are primarily "factual," *see id.* ¶¶ 26.64[3.–1] at 26–362, 26–374—378. Moreover, where a witness gives a statement to one party but then refuses to give it to the another, courts have held that, despite the invocation of the work product privilege, the party should be able to discover the statement given to the adversary. *Id.* at 26–375 n. 11 (collecting cases). Accordingly, we also reject the Government's invocation of the work product privilege and hereby order the Government to produce the Veliotis transcripts. If our assumptions as to the nature of the work product are incorrect, the Government must submit to us, forthwith, for *in camera* inspection a complete transcript and a proposed redacted transcript, from which only the opinion work product, that is the attorneys' mental impressions, conclusions, opinions and legal theories, is excised.[3]

### B. *DCAA Audit*

■ The next group of documents withheld by the Government are the Defense Contract Audit Agency ("DCAA") documents. These have been described by the Government as follows:

> Memorandum, dated February 13, 1985 [from] Kenneth T. Furukawa to James J. [Ford] 2d regarding the Defense Contract Audit Agency's audit of the subsidy claims paid by MARAD to General Dynamics included in kickback costs, and attached report.

General Dynamics' Main Memo., Attachment A at ¶¶ D–1, 2; Attachment S (Letter dated February 8, 1988 from E. Silverman to D. Bohan). Thus, General Dynamics asserts that the Government should be

---

**3.** We observe that General Dynamics has not sought the Veliotis interview transcript on the ground that it is an admission of its agent that the Government seeks to use against General Dynamics at trial. If such were the case, perhaps the second paragraph of Rule 26(b)(3) would be applicable.

compelled to turn over both the memorandum (apparently a transmittal letter) and the "attached report" which it refers to as the DCAA audit. The Government, in asserting the work product privilege for both the memorandum and the audit report, wrote to counsel for General Dynamics stating

> [Y]ou are apparently laboring under a misconception of the report's contents. The audit does not relate to fraudulent pricing by General Dynamics—instead it was generated for purposes of instituting the civil kickback case against Veliotis and others as a consequence of their indictment in this jurisdiction.

General Dynamics' Main Memo., Attachment J at 2 (Letter dated October 17, 1988 from B. Kaswan to N. Chabraja). In its sur-reply memorandum, the Government states that the documents in question are not an "audit" at all, but rather a "calculation of damages based on the figures contained in the criminal indictment." Government's Sur–Reply Memorandum in Opposition to General Dynamics' Third Motion to Compel ("Govt. Sur–Reply") at 9.

General Dynamics claims that it has a substantial need for the documents in dispute because it believes the documents support a statute of limitations defense, and not because it believes the documents reflect an investigation of the alleged fraudulent pricing scheme. Specifically, General Dynamics argues that because the events alleged in the complaint took place in the late 1970's and since General Dynamics was not sued until April 1987, approximately ten years later, unless the Government receives the benefit of the federal tolling provision, 28 U.S.C. § 2416(c), the action is time-barred. General Dynamics states that the documents may show when the Government knew of or may be charged with knowledge of the fraud. At this time, due to the very sketchy, and indeed somewhat conflicting descriptions of the documents by the Government, *i.e.*, that the documents are an audit or merely a calculation, we have no way of discerning what

these documents may show. Thus, we cannot now say whether General Dynamics has a substantial need for the documents, for which no substantial equivalent is available. Accordingly, the Government is ordered to produce the documents for *in camera* inspection so that we can make such a determination.[4]

### C. *The Pross Interview*

In response to General Dynamics' First Document Request, the Government withheld the following based on the attorney-client and work product privileges:

> May 29, 1985 Interview of Thomas Pross by [FBI] SA Brent Shelton; also present Harold Shear, Maritime Administrator; Garrett Brown, Chief Counsel; Richard Bowman, Associate Administrator for Maritime Aids; Sandra Jenkins, Chief, Division of Litigation re Veliotis allegations/Lachmar CDS subsidy....

General Dynamics' Main Memo., Attachment A at ¶¶ P–5; Attachment M, ¶ 5 at 2.

This interview took place approximately two months after Veliotis publicly alleged that General Dynamics obtained inflated subsidies on the Lachmar vessels by misleading MARAD about its estimated costs and profits. Mr. Pross, the former Director of the Office of Shipbuilding Costs, was the MARAD official directly involved in the recommendation of whether a domestic cost of a ship was fair and reasonable. The interview was conducted by an FBI agent with four other persons present. The Government has reportedly told General Dynamics that Agent Shelton "was acting under the control of two Department of Justice criminal attorneys, James Graham and Thomas Hamilton, both of whom were investigating Veliotis' charges against General Dynamics." Declaration of David C. Bohan, sworn to April 18, 1989, at ¶ 12 (Attachment B to General Dynamics' Main Memo.). For this reason, the Government has asserted the privileges.

---

**4.** We do not reach, at this time, General Dynamics' second ground for compelling production of the documents, that is that the Government waived the work product privilege for these documents by bringing this suit.

█ The party claiming privilege, and resisting discovery, has the burden of establishing the existence of the privilege in all respects. *See, e.g., Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *von Bulow v. von Bulow,* 811 F.2d 136, 144 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 (D.C.Cir.1984); *In re Horowitz,* 482 F.2d 72, 82 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). Addressing the attorney-client privilege first, it is clear that in order for the privilege to attach it is necessary that

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers, (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*First Chicago Int'l v. United Exchange Co. Ltd.,* 125 F.R.D. 55, 56 (S.D.N.Y.1989); *see Colton v. United States,* 306 F.2d 633, 637 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 200 (E.D.N.Y.1988); *see also United States v. Bein,* 728 F.2d 107, 112 (2d Cir.1984) (similar formulation of factors); 8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961) (similar formulation of factors).

█ The only two of the above-enumerated factors that are at all problematic are whether the communication was (1) made in confidence to an attorney (2) without the presence of strangers. First, from its reply memorandum, it is apparent that General Dynamics no longer seriously contends that the fact that the statement was made to Special Agent Shelton and not directly to an attorney destroys the privilege. Sim-

ilarly, it is also apparent that the communications were made in confidence despite the presence of "others" in the room. Those "others", MARAD officials, were also the "client" or the client's "inside counsel." Furthermore, the attorney-client privilege encompasses factual investigations by counsel. *Upjohn Co. v. United States,* 449 U.S. 383, 390–91, 101 S.Ct. 677, 683–84, 66 L.Ed.2d 584 (1981); *see Leucadia, Inc. v. Reliance Ins. Co.,* 101 F.R.D. 674, 678 (S.D. N.Y.1983).

█ Having determined that the Pross interview document, which the Government states to be a memorandum three pages long, is covered by the attorney-client privilege, we need not consider the claim of the work product privilege. We must, however, consider General Dynamics' assertion that the Government, by bringing the instant action, has waived its right to assert the attorney-client privilege. This contention is predicated upon the ground that the mere filing of this lawsuit constituted a waiver by the Government of privileged communications relating to the reliance on General Dynamics' cost estimates which are alleged to have been fraudulent. We conclude for the reasons that follow that the Government has not waived the privilege.

█ Because the purpose of the attorney-client privilege, the "oldest of the privileges for confidential communications," is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice," *Upjohn,* 449 U.S. at 389, 391, 101 S.Ct. at 682, 683, the burden of breaching the privilege, once it is determined that the protection applies, is particularly high. *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.,* 111 F.R.D. 76, 85 (S.D.N.Y.1986) ("*SCB*"); *Chase Manhattan Bank, N.A. v. Drysdale Securities Corp.,* 587 F.Supp. 57, 58 (S.D. N.Y.1984). To find a waiver of the attorney-client privilege, General Dynamics must prove that "(1) the very subject of privileged communications was critically

relevant to the issue to be litigated; (2) there was a good faith basis for believing such essential privileged communications existed; and (3) there was no other source of direct proof on the issue." *SCB*, 111 F.R.D. at 83; *see also Greater Newbury-port Clamshell Alliance v. Public Service Company*, 838 F.2d 13, 20 (1st Cir.1988) (the party seeking to pierce the privilege must show that the "evidence will be unavailable to [it] if the privilege prevails."). In essence, a waiver is found only where it would be unfair and inconsistent to permit the retention of the privilege. 8 J. Wigmore, Evidence § 2388 at 855 (McNaughton rev. 1961); *see Clamshell*, 838 F.2d at 20; *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982).

If we assume for the sake of argument that General Dynamics can show the first and the second elements enumerated above, it nevertheless cannot show the third element as there is another direct source of proof on the issue: Mr. Pross himself. General Dynamics claims that because Mr. Pross is now retired on disability, as he suffers from multiple sclerosis and, as a result, can only be deposed for brief intervals of time at his home, Mr. Pross' "unique knowledge necessary to General Dynamics defense is unavailable." General Dynamics' Main Memo. at 16. We disagree. General Dynamics has not shown that the information is otherwise unavailable; rather, it has merely shown that it may be somewhat inconvenient to obtain the information it seeks. Accordingly, General Dynamics has not met its burden of piercing the privilege and that part of its motion to compel the Pross Interview documents is denied.

### D. *Comparative Data Documents*

▮ General Dynamics has requested the production of two broad categories of documents, the "comparative data documents," relating to cost estimates and price information for other LNG ships, as well as other non-LNG vessels, constructed or planned by General Dynamics' competitors and subsidized by MARAD. General Dynamics seeks the documents submitted to MARAD in the application for the subsidy as well as MARAD's analysis of the estimates. General Dynamics' Main Memo., Attachment A at ¶¶ C–5, C–6, C–7, C–9 and C–10. The Government, in an attempt to limit the issues presented to us for adjudication, asserts that it has provided General Dynamics with the information requested in ¶¶ C–5, C–6 and C–7, subject to what it claims were redactions for "confidential trade information, specifically, sensitive cost data, and ... deliberative process information." Declaration of Ellen B. Silverman, sworn to May 15, 1989, Exhibit A. The Government maintains, in separate sworn statements of the Trial Attorney for MARAD and one of the assistant United States Attorneys handling the matter, that, despite its earlier position that it would be unduly burdensome to produce the documents called for in request ¶¶ C–9 and C–10, the Government undertook, in response to this motion, a search for responsive documents and found that it no longer has any documents responsive to these requests and that the documents presumably were destroyed in the regular course of business on account of their age (more than fifteen years old). Declaration of Ellen B. Silverman, sworn to May 15, 1989, at ¶ 3; Declaration of James F. Ford, sworn to May 15, 1989, at ¶ 6. We accept this assertion from the Government, and, therefore, we decline General Dynamics' invitation to rule on a moot issue.

Consequently, the only issue on which we will rule with respect to this category of documents is whether General Dynamics is entitled to the information that was redacted when the Government produced documents in response to ¶¶ C–5, C–6 and C–7. The Government's primary reason for redacting the documents was to protect the confidential information supplied to MARAD by the other shipyards. General Dynamics has stated that it is "amenable to a protective order limiting the use and dissemination of those documents." General Dynamics' Reply Memorandum in Support of its Third Motion to Compel Production of Documents Withheld by the Government at n. 4. Although the Government makes

only conclusory assertions regarding the confidential nature of the redacted information, we will assume for the purposes of this motion that the redacted information contains trade secrets that are protected under Rule 26(c). *See Culligan v. Yamaha Motor Corp.*, 110 F.R.D. 122, 125 (S.D. N.Y.1986) (the injury that would flow from the disclosure is often patent). We observe, however, that this assumption is somewhat tenuous in the instant case given the age of the documents in question. *See, e.g., United States v. International Business Machines Corp.*, 67 F.R.D. 40, 47–49 (S.D.N.Y.1975) (stale information, that is information that is three to fifteen years old, not worthy of trade secret protection); *see also In Re "Agent Orange" Product Liability Litigation*, 104 F.R.D. 559, 575 (E.D.N.Y.1985) (court lifted blanket protective order because information was not current).

 In order to gain access to such protected information, assuming it is in fact protected, the party seeking the discovery must show that it is relevant and necessary. We believe that General Dynamics has made a showing of relevance by its citation to the analogous cases under the lapsed Renegotiation Act of 1951, 50 U.S.C.App. § 1211 *et seq. Instrument Systems Corp. v. United States*, 546 F.2d 357, 361, 212 Ct.Cl. 99 (1976); *Butkin Precision Mfg. Corp. v. United States*, 544 F.2d 499, 505–06, 211 Ct.Cl. 110 (1976); *Aero Spacelines Inc. v. United States*, 530 F.2d 324, 338–40, 208 Ct.Cl. 704 (1976). Furthermore, it has been said that "a showing of relevance can be viewed as a showing of need...." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C.Cir.1984; *accord Culligan v. Yamaha Motor Corp.*, 110 F.R.D. at 125.

We believe that an appropriate confidentiality order can be structured to fully protect the Government's interest in retaining the confidentiality of the information in question. *See, e.g., Culligan*, 110 F.R.D.

at 125; *Triangle Ink & Color Co. v. Sherwin–Williams Co.*, 61 F.R.D. 634, 636 (N.D.Ill.1974); *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410–11 (N.D. N.Y.1973). Therefore, the Government is hereby ordered to produce the redacted material to opposing counsel, which may be used by opposing counsel and their independent experts to prepare for trial. The information is not to be transmitted to General Dynamics for competitive use in construction of LNG tankers, although we observe that the papers seem to indicate in a somewhat conclusory fashion that both General Dynamics and its competitors are no longer engaged in the LNG tanker construction industry. If this fact is indeed true, it provides further support for an order of production as the information redacted by the Government need not be protected from disclosure any longer.[5]

## II. The Government's Fourth Rule 37 Motion

As to the Government's Fourth Rule 37 motion, the Government contends that approximately 200 documents and several sections of Board of Directors and Executive Committee Meeting notes and minutes have been improperly withheld. General Dynamics contends that the documents have been properly withheld as they are protected by the attorney-client privilege and/or the work product privilege. The Government has moved for an order compelling the production of these documents for several reasons. These documents have been classified by the Government as falling into the following categories: (1) documents dated 1976 through October 1977 which appear to relate to the formation of the Lachmar partnership, Lachmar contracts and/or the Lachmar ships' purchase price, Government's Memorandum of Law in Support of its Fourth Rule 37 Motion at 4 ("Govt. Rule 37 Mem."); (2) documents which memorialize General Dynamics' corporate meetings, Govt. Rule 37

---

**5.** We have not addressed the Government's claim of deliberative process privilege as the

Government has not demonstrated in any way

Mem. at 5 [6]; (3) documents dated 1984 through 1985 which appear to relate to an internal investigation conducted by General Dynamics in response to an allegation of fraud in the procurement of the Government subsidies raised in the 1985 *St. Louis Post–Dispatch* newspaper article, Govt. Rule 37 Mem. at 6; (4) documents dated 1983 through 1985 which appear to relate to an internal investigation conducted by General Dynamics of procurement irregularities, Govt. Rule 37 Mem. at 7; and (5) documents dated from 1972 through 1985 which deal with a number of issues which are the subject of this lawsuit, Govt. Rule 37 Mem. at 8.

### A. *1976 and 1977 Documents*

With respect to the documents dated 1976 through October 1977 which the Government contends appear to relate to the formation of the Lachmar partnership, Lachmar contracts and/or the Lachmar ships' purchase price, Govt. Rule 37 Mem. at 4, the Government asserts that for those documents that have been withheld pursuant to the attorney-client privilege, the documents should be ordered produced since the documents do not reflect communications made to secure legal advice from a professional legal advisor in his capacity as such, and that even if the documents are privileged, they are subject to the crime/fraud exception to the privilege. With regard to the one document in this group that was also withheld as work product, the Government maintains that it was not prepared in anticipation of imminent or concrete litigation, that the Government has a substantial need for the document, and that the crime/fraud exception of the work product privilege is applicable.

As both sides acknowledge, in order for communications to be privileged, the attorney to whom the communication is made must be functioning as an attorney. The fact that the attorney is in-house counsel does not mean that the privilege is unavailable. *See, e.g., Polycast Technology Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 49 (S.D.N.Y.1989); *O'Brien v. Board of Educ.*, 86 F.R.D. 548, 549 (S.D.N.Y.1980); *North American Mortgage Investors v. First Wisconsin National Bank*, 69 F.R.D. 9, 11 (E.D.Wisc.1975). However, in-house counsel's law degree and office are not to be used to create a "privileged sanctuary for corporate records." *Research Institute for Medicine and Chemistry, Inc. v. Wisconsin Alumni Research Foundation*, 114 F.R.D. 672, 676 (W.D.Wisc.1987); *Handgards Inc. v. Johnson & Johnson*, 69 F.R.D. 451, 454 (N.D.Cal.1975). In addition, the solicitation or giving of business advice is not privileged. *See In re Grand Jury Subpoena Duces Tecum dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir.1984); *Cuno, Inc. v. Pall, Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y.1988); *SCB, supra*, 111 F.R.D. at 79; *Chubb Integrated Systems v. National Bank of Washington*, 103 F.R.D. 52, 66 (D.D.C.1984). The mere fact that business advice is given or solicited does not, however, automatically render the privilege lost: where the advice given is predominantly legal, as opposed to business, in nature the privilege will still attach. *Cuno, Inc.*, 121 F.R.D. 198, 204; *North American Mortgage Investors*, 69 F.R.D. at 11; *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni*, 61 F.R.D.

---

why this privilege should protect disclosure of this material.

**6.** We are informed in the parties' submissions that they were going to attempt to conciliate General Dynamics' claim of privilege with respect to the notes and minutes of the Board meetings. Accordingly, General Dynamics withheld its response to the Government's motion to compel these materials. General Dynamics' Memorandum in Opposition Government's Rule 37 Motion at 3–4. In its reply memorandum, the Government stated that all claims were resolved save the Government's demand for five passages. Reply Memorandum of law in Support of Government's Fourth Rule 37 Motion at 1–2 n*. The Government claimed that it "is awaiting General Dynamics' decision whether to produce them voluntarily or submit them to the Court for *in camera* review." *Id.* The Government also stated that General Dynamics was to submit *in camera* three passages to the Court for a determination of relevancy. *Id.* at 2. In view of the fact that no documents have been submitted to us for such review, we are left to assume that the parties have amicably resolved their dispute, and, accordingly, this opinion will not address the merits of the dispute.

653, 660 (D.P.R.1974); 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 503(a)(1)[01] at 503–221.

■ The Government insists that from the "meager descriptions provided by General Dynamics in its indices, it appears that many if not all of these documents have as their 'primary purpose' the on-going business negotiations rather than efforts to secure legal advice." Govt. Rule 37 Mem. at 12. The Government further argues that because certain in-house counsel were "steeped in the negotiating process," communications to and from counsel are "outside the traditional ambit of attorney-client communications" and, therefore, must be produced. In response, General Dynamics observes that the Government need not rely on the "meager descriptions" since it has viewed at least one half of the 1976–77 documents, pursuant to a stipulation between the parties that such a viewing would not constitute a waiver of the privilege asserted, and cannot articulate even one specific example of a document that is not truly privileged or a description that is not truly accurate. General Dynamics Memorandum in Opposition to Government's Fourth Rule 37 Motion at 14 ("GD Mem. in Opp.").

■ This argument by General Dynamics, although facially persuasive, does not carry the day. As we stated in section I of this order, the party claiming privilege, and resisting discovery, has the burden of establishing the existence of the privilege in all respects. *See, e.g., Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C.Cir.1984); *In re Horowitz*, 482 F.2d 72, 82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). It is incumbent upon General Dynamics to show by affidavit or other competent evidence sufficient facts to bring the disputed documents within the confines of the privilege. *Rattner v. Netburn*, 88 Civ. 2080(GLG), 1989 WL 223059, 1989 U.S.Dist. LEXIS 6876, *5 (S.D.N.Y. June 20, 1989); *Hemming v. Alfin Fragrances, Inc.*, No. 86 Civ. 2563(JFK), 1989 WL 223068, 1989 U.S. Dist. LEXIS 9421 (S.D.N.Y. August 14, 1989); *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 521 (D.Del.1980); *North American Mortgage Investors, supra*, 69 F.R.D. at 12; *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93–94 (D.Del. 1974). This burden cannot be discharged by "mere conclusory or *ipse dixit* assertions." *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir.1984) (*quoting In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965)); *accord von Bulow v. von Bulow*, 811 F.2d at 146. The court must have a basis on which to weigh the applicability of the claim of privilege. *International Paper Co.*, 63 F.R.D. at 94.

In order to invoke its privileges with respect to these documents, General Dynamics has relied exclusively on the conclusory assertions in its privilege index. We note that while General Dynamics has submitted affidavits in support of its position that the Government's motion should be denied, none of the affidavits relates to the 1976–77 documents, but rather both affidavits relate only to the 1983–1985 investigation documents. In response to the Government's motion, General Dynamics, as we observed above, has improperly attempted to shift the burden to the Government to show why the documents are not privileged. Because we have no evidence before us other than General Dynamics conclusory assertions of privilege in the privilege index and in its memorandum of law, we are constrained to hold that the documents must be produced. "An improperly asserted claim of privilege is no claim of privilege at all." *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. at 94; *see also von Bulow v. von Bulow*, 811 F.2d at 146 (where privilege claim lacks factual support, production should be ordered); *Hemming v. Alfin Fragrances, Inc.*, No. 86 Civ. 2563(JFK), 1989 WL 223068, 1989 U.S. Dist. LEXIS 9421 (S.D.N.Y. August 14, 1989) (where party proffers only conclusory assertions in its Rule 34 objections and its memorandum of law, privilege claim will not be sustained).

Accordingly, General Dynamics, having failed to properly assert the attorney-client privilege, is hereby ordered to produce the following documents as identified in the Declaration of Nancy L. Savitt ("Savitt Decl."), sworn to February 23, 1989, Exhibit A: Nos. 13, 14, 15, 16, 21, 22, 23, 27, 77, 159, 160, 194, 301, 412, 433, 449, 484, 496, 497, 498, 504, 517, 528, 596, 641, 686, 702, 709, 736, 737, 819, 843, 860, 864, 867, 868, 877, 879–882.[7] For the same reason, General Dynamics is also directed to produce the one document, No. 557, in this category for which both the attorney-client and work product privileges have been asserted.

### B. *General Dynamics' Internal Investigations*

We will next address the Government's contention that General Dynamics should be ordered to produce documents generated during two separate internal investigations. One investigation was conducted in response to an article which appeared in the March 10, 1985 edition of the *St. Louis Post–Dispatch*, in which P. Takis Veliotis reportedly accused General Dynamics of misleading MARAD by understating the profits General Dynamics anticipated earning in constructing two of the Lachmar vessels. *See* Exhibit A to General Dynamics Privileged Document Index (Savitt Decl., Ex. A). The Government contends that it is entitled to all the documents dated 1984 through 1985 which, the Government maintains, are apparently related to this internal investigation conducted by General Dynamics.[8] The Government claims that General Dynamics' invocation of the attorney-client privilege for many of the documents is improper as the documents do not appear to reflect confidential communications between an attorney and a client. Govt. Rule 37 Mem. at 7. The Government

also argues that the assertion of the work-product privilege is improper because the documents were not prepared in the anticipation of imminent or concrete litigation, because General Dynamics has failed to show that the documents were prepared by its litigation counsel or his agents, and because the Government has substantial need for the documents. *Id.*

The other investigation from which documents are sought was begun in October of 1983 on behalf of the General Counsel and Associate General Counsel, by the internal auditor and his staff, into the possible irregularities in the procurement process at the Quincy Shipbuilding and Electric Boat Divisions relating to certain vendors including Frigitemp. *See* Exhibit B to General Dynamics Privileged Document Index (Savitt Decl., Ex. A). The Government contends that General Dynamics must produce these documents for the same reasons mentioned in the paragraph directly above. Govt. Rule 37 Mem. at 8. Although it did not so enumerate in the pages outlining the Government's position with respect to these two internal investigations, *see* Govt. Rule 37 Mem. at 7–8, the Government also contends that even if the documents it seeks are privileged, that the crime/fraud exception to both the attorney-client and work product privileges are applicable. Govt. Rule 37 Mem. at 18–20; Reply Memorandum of Law in Support of the Government's Fourth Rule 37 Motion ("Govt. Rule 37 Reply Mem.") at 7–11.

Addressing the 1985 investigation first, General Dynamics has submitted the sworn declaration of Robert H. Duesenberg who is the General Counsel of General Dynamics to support its position that the documents are privileged. Mr. Duesenberg states that upon reading the article in the

---

**7.** In light of this finding, it is not necessary to address with regard to these documents the Government's contention that the crime/fraud exception to the privilege is applicable.

**8.** We are puzzled as to why the Government has requested under this category that documents dated *1984* be produced. The Government itself denominated this category as "documents ... which appear to relate to an internal investigation conducted by General Dynamics *in re-*

*sponse to* allegations of fraud ... raised in a 1985 *St. Louis Post–Dispatch* newspaper article." Govt. Rule 37 Mem. at 6 (emphasis added). Thus, by nature of its classification, this category only encompasses documents dated no earlier than 1985. Accordingly, we will treat the request for documents dated 1984 with the category of documents relating to the other internal investigation.

*Post–Dispatch,* he "immediately commenced an internal investigation to ascertain the facts." Declaration of Robert H. Duesenberg, sworn to April 14, 1989, ("Duesenberg Decl.") at ¶ 4. He explains that there were three purposes to the investigation:

> (1) to prepare for potential litigation with the United States Government, (2) to assess the possible impact the article might have on the ongoing litigation between General Dynamics and Veliotis, both in New York and in Canada, as well as ongoing litigation between General Dynamics and the Trustee in Bankruptcy of Frigitemp Corporation, and (3) to enable me to offer informed advice and counsel to the Company's Board of Directors, including the Company's Chairman and Chief Financial Officer, who were scheduled to testify at a Congressional hearing concerning other allegations Veliotis had made against the Company.

Duesenberg Decl. at ¶ 4. Mr. Duesenberg affirms that he asked Daniel J. Kelley, then the head of cost engineering at the Quincy Shipbuilding Division ("QSD"), to investigate the allegations and gather and review all relevant documents and to make an independent analysis of General Dynamics' costs and profits on the Lachmar vessels, and to report directly to Mr. Duesenberg and to QSD Division General Counsel, Carter Eltzroth. *Id.* at ¶¶ 5–6. Two others assisted Mr. Kelley with this task: George McAndrew, the retired former QSD cost engineering manager, and Joseph Delehant, QSD Deputy General Counsel. *Id.* at ¶ 6. At the conclusion of the investigation, Mr. Kelley gave Mr. Duesenberg three binders of documents, many of which are said to contain the mental impressions, thought processes and conclusions formed by Mr. Kelley in the course of the investigation. *Id.* at ¶ 7. Mr. Duesenberg states that none of the documents has been distributed outside the company and that to the best of his knowledge, the only people with copies of the binders are himself, Mr. Kelley and Mr. Eltzroth. *Id.* General Dynamics has also submitted the sworn declaration of Daniel J. Kelley, see GD Mem. in Opp. at Exhibit G, to corroborate Mr. Dues-

enberg's declaration and to enumerate on the content of the documents.

The Government seeks the 60 documents generated in the course of this investigation, which comprise the three binders and a work file maintained by Mr. Kelley consisting of his handwritten notes and analyses. Declaration of Daniel J. Kelley ("Kelley Decl.") at ¶ 4–6. General Dynamics has withheld the documents, asserting the work product privilege as it claims that the 60 documents contain the work product, conclusions, mental impressions and thought processes of Messrs. Kelley, McAndrew and Delehant. General Dynamics also asserts the attorney-client privilege, citing *Upjohn Co. v. United States,* 449 U.S. 383, 390–91, 101 S.Ct. 677, 683–84, 66 L.Ed.2d 584 (1981), since the analyses of Messrs. Kelley, McAndrew and Delehant were generated at Mr. Duesenberg's behest so as to enable him to offer to offer legal advice to the company. *See also Leucadia, Inc. v. Reliance Ins. Co.,* 101 F.R.D. 674, 678 (S.D.N.Y.1983) (the attorney-client privilege encompasses factual investigations by counsel).

The facts of the instant case are very similar to those in *Upjohn.* There, the company, by its general counsel, conducted an extensive investigation to determine the nature and magnitude of any payments made by Upjohn or any of its subsidiaries or any of the employees of either to any employee or official of a foreign government in violation of federal law. 449 U.S. at 387, 101 S.Ct. at 681. The Supreme Court held that communications from the employees to the attorneys or the attorneys' agents were privileged from disclosure under the attorney-client privilege. *Id.* at 390–97, 101 S.Ct. at 683–86. The disclosure of the underlying facts by those who communicated with the attorneys, however, is not privileged, *id.* at 395–96, 101 S.Ct. at 685–86, and the Government may question the employees who communicated with counsel. The Court also held that to the extent the Government sought materials containing the thought processes, mental impressions, and conclusions of the attorneys, such materials were immune

from disclosure under the work product doctrine. The Court did not go so far as to hold that such materials were never discoverable, but it did state that the standard for disclosure of such materials was greater than merely showing substantial need for the documents and inability to obtain their equivalent without undue hardship. *Id.* at 401–02, 101 S.Ct. at 688–89.

Here, the investigation was conducted at the behest of the general counsel and under his supervision. Contrary to the Government's assertion, it is of no consequence that the investigation followed the publication of Veliotis' allegations. We are somewhat troubled, however, by General Dynamics' assertion of the privileges for a reason not expressly articulated by the Government. For example, although General Dynamics' invoked both the attorney-client and work product privileges, apparently with respect to all of the documents, General Dynamics does not specify where the communications protected under the attorney-client privilege end and where the work product begins. However, in ultimate effect, this is not problematic since General Dynamics asserts that all sixty of the withheld documents were generated during the investigation, Kelley Decl. at ¶ 6, and further, it asserts, without challenge by the Government, that it produced the underlying source materials which were used to generate the withheld documents. GD Mem. In Opp. at 10. Had these underlying documents not been provided, we would have ordered them produced. *See Fisher v. United States,* 425 U.S. 391, 403–04, 96 S.Ct. 1569, 1577–78, 48 L.Ed.2d 39 (1976) (underlying documents in existence prior to the investigation are otherwise discoverable); *see also Upjohn, supra,* 449 U.S. at 395, 101 S.Ct. at 685 (with regard to the attorney-client privilege, distinguishing facts from communications). Accordingly, at the very least, General Dynamics has met its burden of establishing

the weaker assertion of privilege, that all of the withheld documents contain work product, if not the stronger privilege that the documents were confidential communications.[9]

As to the contention that the documents generated in the 1985 investigation do not constitute work product, we reject the Government's cramped assertion that the doctrine is inapplicable since there was "then no on-going or threatened litigation relating to General Dynamics' price estimates submitted to MARAD." Govt. Rule 37 Mem. at 22. The Government argues that since the on-going litigation did not directly involve the subject of the investigation, General Dynamics was unable to create protectable work product. Govt. Rule 37 Reply Mem. at 3–6. First, for those documents that are privileged under both the attorney-client and work product privileges, whether there was ongoing or threatened litigation is irrelevant. As to those documents which are covered only by the work product privilege, we do not believe that the ongoing or threatened litigation requirement undermines the invocation of the privilege in the instant case. While General Dynamics was not facing a lawsuit mirroring Veliotis' exact allegations at the time of the investigation, it can certainly be said that the documents were prepared under the direction or supervision of corporate counsel for use in ongoing litigation or in anticipation of litigation not yet filed. *See In re Grand Jury Subpoena,* 599 F.2d 504, 511–12 & n. 5 (2d Cir.1979); *In re Grand Jury Investigation,* 599 F.2d 1224, 1229 (3d Cir.1979); *United States v. Lipshy,* 492 F.Supp. 35, 44–46 (N.D.Tex.1979). Indeed, at the time this particular investigation was initiated so as to enable Mr. Duesenberg to ascertain the facts in order to give informed legal advice to the company, there were two ongoing lawsuits by General Dynamics against Mr. Veliotis, as well as the action related to this one

---

**9.** We observe that the factual investigation, so similar to that in *Upjohn* and *Leucadia,* also deserves the protection of the attorney-client privilege. The investigation here, conducted in order to determine whether General Dynamics was in any way liable to the Government or to others for violations of law for the purpose of rendering legal advice, was kept entirely confidential. Thus, each of the communications between client and counsel contained in these documents is privileged.

brought by the Bankruptcy Trustee of the Frigitemp Corp., *Bernstein v. IDT*, 84 Civ. 5299(KC), as well as a Congressional investigation into Veliotis' other allegations of wrongdoing by General Dynamics. Duesenberg Decl. at ¶ 9–10; GD's Mem. in Opp. at 9. Moreover, the instant litigation was commenced in 1984 against the defendants other than General Dynamics. The action was stayed pending the criminal investigations and prosecutions. When the stay was lifted in early 1987, General Dynamics was added as a party. The claims concerning submissions of false cost estimates to MARAD were not added until February of 1988. The Government claims, however, that General Dynamics could not create "protectable work product with respect to litigation with the United States" since the Government did not know of the alleged false cost submissions at the time of the investigation. Govt. Rule 37 Reply Mem. at 3–6. This position is entirely untenable, as proven by the instant lawsuit, because it presumes that complaints cannot be amended to add claims or parties.

■ For all of the foregoing reasons, then, it can fairly be said that the withheld documents were prepared because of the prospect of litigation, and, therefore, that they need not be disclosed absent the requisite showing by the Government. 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2024 at 198 (1970). Given the fact that General Dynamics already produced all of the underlying source materials to the Government, the Government cannot satisfy the high standard required by the Supreme Court in *Upjohn*, discussed above, in order to have the production of the withheld opinion work product compelled. As the Government aptly stated on page 13 of its Memorandum in Opposition to General Dynamics' Third Motion to Compel Production of Documents withheld by the Government, a party "simply cannot prepare its cases by piggy-backing on the litigation efforts of its adversary." There-

fore, the Government's motion to compel production of the fruits of this investigation is denied.

■ With regard to the Government's contention that is entitled to the documents dated 1983 through 1985 which appear to relate to an internal investigation conducted by General Dynamics into procurement irregularities, Govt. Rule 37 Mem. at 7, General Dynamics argues that these "procurement audit materials," 39 documents in all, are immune from disclosure. The Duesenberg Declaration, equally applicable to this investigation, also establishes that these documents constitute at least work product. On October 17, 1983, in the wake of the September 1983 indictments of George Davis and other former officers of Frigitemp and of General Dynamics' officials Takis Veliotis and James Gilliland, General Dynamics undertook its own confidential investigation of the possible irregularities at QSD and the Electric Boat Division in the procurement process as it related to Frigitemp. Duesenberg Decl. at ¶ 8–9; Savitt Decl., Ex. A. This investigation was expanded to include other vendors including International Paint, Vevey, Mague, Dominion Bridge, Acres American, Daniel International and Perini. Duesenberg Decl. at ¶ 8. At the time, in addition to the pending criminal investigations and prosecutions, the related civil case, *Bernstein v. IDT*, had been filed against General Dynamics.

The Government argues that here, too, General Dynamics was unable to create protectable work product since the on-going litigation did not directly involve the subject of the investigation. See Govt. Rule 37 Reply Mem. at 3, 6. We do not fully understand this argument asserted with respect to this particular investigation, since this investigation appears to have exactly paralleled the ongoing criminal investigation as well as the pending civil litigation.[10] Indeed, General Dynamics' General Counsel stated that

---

**10.** Nor do we fully appreciate the Government's relevance assertion. Indeed, contrary to the Government's assertion, there is nothing to indicate that this 1983 investigation related in any

way to any illegality with respect to fraudulent pricing submissions to MARAD. Rather, the evidence submitted indicates that the investigation related only to "irregularities" in the pro-

[t]he purpose of our [1983] investigations was to determine the facts so that we could advise the Board and executive officers of the Corporation concerning the Corporation's position in the ongoing litigation, and to prepare for potential further or additional litigation against General Dynamics, including potential claims that the Corporation was vicariously liable for the alleged conduct of Gilliland and Veliotis.

Duesenberg Decl. at ¶ 10. General Dynamics has submitted the sworn statement, which is uncontroverted, that the documents relating to this investigation have been withheld since they actually reflect the work product, thought processes and mental impressions of the agents for the general counsel who conducted the investigation, and have not been circulated to anyone other than inside and outside counsel. Therefore, for all of the foregoing reasons as well as those enumerated above with respect to the 1985 investigation, we conclude that these audit documents constitute, at least, work product and are non-discoverable absent the requisite showing by the Government.

 The final argument of the Government with respect to the documents generated by General Dynamics in the two investigations is that the crime/fraud exception to the privileges is applicable. In essence, the Government seeks the protected documents on the theory that General Dynamics committed fraud in 1976 and 1977, and then sought to conceal the fraud by their investigations in 1983 and 1985. The Government cites *inter alia, In re Grand Jury Subpoena Duces Tecum dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir.1984); *In re John Doe Corporation*, 675 F.2d 482, 491 (2d Cir.1982); *In re Special September 1978 Grand Jury*, 640 F.2d 49, 52 (7th Cir.1980); *In re Grand Jury Subpoenas*, 561 F.Supp. 1247, 1254 (E.D.N.Y.1982); *In re A.H. Robins Co., Inc.*, 107 F.R.D. 2, 9 (D.Kan.1985), for the proposition that the documents, if privileged, lose their privileged status upon a *prima facie* showing by the Government that the client consult-

ed the attorney in order to aid in the commission of the fraud, and claims that it has made such a showing.

 Because we have ordered the 1976–77 documents produced on the ground that the privilege has not been properly claimed, the argument regarding the crime/fraud exception is moot. We must, nonetheless, address this argument with respect to the 1983 and 1985 investigations and the documents generated in the course thereof. The Government's contention is that any privilege that General Dynamics had was lost as General Dynamics consulted its attorneys in an attempt to conceal the fraud which allegedly occurred in the 1970's. Govt. Rule 37 Reply Mem. at 7. The Government has not, however, met its burden of establishing that it has probable cause to believe that the communications in issue were made in furtherance of the alleged fraud, that is in furtherance of an effort to conceal the earlier fraud. *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986) (crime/fraud exception cannot be successfully invoked merely upon showing that client communicated with counsel while the client was engaged in [fraudulent] activity; exception applies only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or conceal the [fraudulent] activity). The Government has submitted no proof, save the surmise in one footnote of its reply memorandum, that General Dynamics undertook the investigations with the intent to conceal from the Government its prior alleged fraud, or that such concealment occurred; in fact, the only evidence submitted on this question is the sworn statement of General Dynamics General Counsel that the investigations were undertaken in order to ascertain the facts regarding the allegations made against it and its agents by private parties and the Government. *See* Duesenberg Decl. at ¶¶ 4, 9. Accordingly, we conclude that the Government has not established the applicability of the crime/fraud exception, and, consequently, the documents remain pro-

curement process, not to the alleged fraudulent pricing scheme.

tected from disclosure for the reasons stated above. This holding does not, however, prevent the Government from deposing those individuals it claims have knowledge of the facts it seeks; it merely protects against the disclosure of the confidential communications.

#### C. *Assorted Documents*

The Government asserts that it is entitled to "documents dated from 1972 through 1985 which deal with a number of issues which are the subject of this lawsuit," Govt. Rule 37 Mem. at 8. For the reasons stated in part II, section A of this order, we conclude that General Dynamics has failed to properly assert either the attorney-client or work product privileges with respect to the documents requested. Accordingly, it is hereby ordered that the following documents be produced: Nos. 38, 39, 42, 43, 98, 99, 100, 127, 219–223, 236–39, 243, 261, 711–715, 744, 750, 755, 756, 872, and 874.

### III. Conclusion

To summarize our rulings with regard to General Dynamics' motion to compel, we conclude that the Government must produce the Veliotis transcripts to General Dynamics, and the material it redacted in response to requests ¶¶ C–5, C–6, C–7 to counsel for General Dynamics. The Government need not produce the Pross interview memoranda as General Dynamics has not demonstrated that retention of the attorney-client privilege would be unfair in light of the fact that General Dynamics is still able to depose the source of the information. Finally, the Government must produce to the Court for *in camera* inspection the DCAA Audits.

With regard to the Government's motion to compel, General Dynamics must produce the 1976–77 Documents, and the Assorted Documents, the document numbers of which were listed in the discussion above, on the ground that it did not properly assert its privilege. General Dynamics need not produce the documents generated in either the 1983 or 1985 investigations.

All production must be made within 20 days of the date of this Order.

SO ORDERED.