**UNITED STATES of America,**
**Plaintiffs,**

v.

**George G. DAVIS, Gerald E. Lee, James H. Gilliland, P. Takis Veliotis, and General Dynamics Corporation, Defendants.**

**No. 85 Civ. 6090(KC).**

United States District Court,
S.D. New York.

Aug. 9, 1990.

Otto Obermaier, U.S. Atty., S.D.N.Y., by Nancy L. Savitt, Ellen B. Silverman and Beth A. Kaswan, New York City, for plaintiffs.

Jenner & Block by Nicholas D. Chabraja, David C. Bohan, Patricia Logue and David DeBruin, Chicago, Ill., Gubman, Sitomer, Goldfaden & Edlitz, P.C. by Robert I. Edlitz and Michael R. Klekman, Hollman & Byrne by Matthew L. Byrne, Anderson Kill Olick & Oshinsky by John Gross, Spengler Carlson Gubar Bodsky & Frischling, New York City, for defendants.

### ORDER

CONBOY, District Judge:

This order is further to our Orders dated June 6, and July 2, 1990, relating to General Dynamic's Third Motion to Compel Production of Documents Withheld by the Government and the Government's Fourth Rule 37 Motion. In our July 2 Order, we agreed to open our June 6 Order such that we would view *in camera* all of the 1976–77 Documents and the Assorted Documents for which we had previously found General Dynamics' invocation of the attorney-client privilege procedurally insufficient. In addition, General Dynamics was also directed to submit for *in camera* review disputed passages of its Board of Directors' Minutes.

Having carefully reviewed the declarations submitted by General Dynamics, Declaration of Rona W. Goodman, dated July 10, 1990 ("Goodman Decl."), Declaration of H. Clayton Cook, dated July 6, 1990 ("Cook Decl."), Declaration of James A. Rossi, dated July 12, 1990 ("Rossi Decl."), Declaration of E. Charles Rowan, dated July 12, 1990 ("Rowan Decl."), Declaration of Herbert B. Olfson, dated July 13, 1990 ("Olfson Decl."), Declaration of Edward E. Lynn, dated July 9, 1990 ("Lynn Decl."), Declaration of Carter W. Eltzroth, dated July 13, 1990 ("Eltzroth Decl."), Declaration of Robert H. Duesenberg, dated July 13, 1990 ("Duesenberg Decl."), and Declaration of John P. Maguire, dated July 12, 1990 ("Maguire Decl."), and having carefully examined each and every document appended to these declarations, we have determined that General Dynamics has made the requisite showing to support the assertion of the attorney-client privilege with regard to all of the following documents (in order of their presentation to the Court): Document Nos. 22, 23, 77, 159, 196, 819, 868, 882, 21, 484, 877, 750, 496, 498, 412, 13, 14, 15, 16, 21, 38, 39, 42, 43, 160, 194, 219, 220, 221, 222, 223, 243, 261, 449, 497, 517, 528, 596, 641, 702, 709, 711, 712, 713, 714, 715, 736, 737, 744, 750, 755, 756, 843, 860, 864, 867, 872, 877, 879, 880, 98, 99, 100, 127 and all of the passages of the Board of Directors' minutes.[1] In addition, we have determined that as to these documents, the crime/fraud exception to the privilege is inapplicable. Accordingly, General Dynamics need not produce any of the afore-mentioned documents to the Government.

There are eight documents that we find must be produced in part or in whole: 504,

---

1. These minutes are discussed in and appended to the Maguire Decl. *United States v. Davis,* 131 F.R.D. 391 and 131 F.R.D. 427 (S.D.N.Y.1990).

301, 433, 686, 27, 737, 872, and 874. We will enumerate our reasoning for the disclosure with respect to each document.

 First, we find that although General Dynamics has made the showing of privilege with regard to document number 504, the document is subject to discovery under the crime/fraud exception to the privilege. In our Circuit, the crime/fraud exception cannot successfully be invoked merely upon showing that the client communicated with counsel while the client was engaged in criminal or fraudulent activity. The exception applies only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or conceal the criminal or fraudulent activity. *See In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986). Thus, in order successfully to pierce the privilege, the party seeking to overcome it, here the Government, must show not only that it has probable cause to believe that a crime or fraud has been committed, but that there is probable cause to believe that the communication in issue between attorney and client was in furtherance of the fraud. We conclude that as to document number 504, this showing has been made, as there is enough evidence to subject the attorney and the client to the "risk of non-persuasion" if the evidence is left unrebutted. *See In re Grand Jury Subpoenas*, 561 F.Supp. 1247, 1254 (E.D.N.Y.1982). Accordingly, General Dynamics must produce document no. 504 to the Government.

 With regard to document number 301, we conclude that the privilege has not been properly asserted. The only declaration that is germane to this document is the Olfson Declaration, ¶ 8. Having examined the document, we find that it does not relay any legal advice, and that it merely discusses factual circumstances, to wit: developments in the negotiations among the Lachmar partners. Accordingly, we find that the document must be produced to the Government. As for document number 433, we conclude that the memorandum itself, from counsel to the General Manager of the Quincy Shipbuilding Division, with a carbon copy to the General Counsel of General Dynamics at the St. Louis headquarters, does contain legal advice as well as legal thoughts and mental processes. However, appended to the memorandum is a page that contains certain computations of one of the Lachmar partners, which are not referred to in the Olfson Declaration. Merely because factual data is transmitted through an attorney does not mean that it takes on a confidential character. *See, e.g., Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y.1988); *Union Carbide Corp. v. Dow Chemical Co.*, 619 F.Supp. 1036, 1047 (D.Del.1985). Accordingly, we conclude that the computations only, and not the memorandum, must be produced to the Government.

 Document 686 is a memorandum prepared by General Dynamics' General Counsel at the time, Edward E. Lynn, for General Dynamics' Chairman of the Board, David Lewis, dated May 4, 1976. It seems apparent that Mr. Lynn was merely reporting on conclusions already arrived at in negotiations between General Dynamics and outside adversarial parties in the process of forming a partnership with those outsiders. The clear implication of the text is that the information being reported was information that was/is broadly known to the other partners. The first four pages of the memorandum contain no legal advice. Absent a showing that the description of the project documents, as set out in paragraph 3 of the memorandum, is anything other than a straightforward summary of the documents themselves, which plainly have been seen, reviewed, and agreed to by persons outside the confidential attorney-client relationship, we conclude the document must be disclosed. The document, however, may be produced in redacted form, as the fifth and last page of the memorandum arguably contains legal advice and opinions, specifically paragraphs 6(a)–(c). Therefore, General Dynamics is to produce the entire document except for these paragraphs.

 The remaining documents to be discussed are 27, 737, 872 and 874, all of which were attached to the Eltzroth Decla-

ration. This declaration gave us the most difficulty in light of Mr. Eltzroth's role as general counsel to the Quincy Shipbuilding Division of General Dynamics. As the Government asserted, we found Mr. Eltzroth to be "steeped in the negotiating process" of each aspect of the LNG contracts. Accordingly, we have carefully scrutinized each document appended to the Eltzroth Declaration in order to ensure that "in house counsel's law degree and office are not ... used to create a 'privileged sanctuary for corporate records.' " *United States v. Davis,* 131 F.R.D. 391, 401 (S.D. N.Y.1990) (quoting *Research Institute for Medicine and Chemistry, Inc. v. Wisconsin Alumni Research Foundation,* 114 F.R.D. 672, 676 (W.D.Wisc.1987); *Handgards Inc. v. Johnson & Johnson,* 69 F.R.D. 451, 454 (N.D.Cal.1975)). Although the solicitation or giving of business advice is not privileged, *see In re Grand Jury Subpoena Duces Tecum dated Sept. 15, 1983,* 731 F.2d 1032, 1037 (2d Cir.1984); *Cuno, Inc. v. Pall Corp., supra,* 121 F.R.D. at 204; *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.,* 111 F.R.D. 76, 79 (S.D.N.Y.1986); *Chubb Integrated Systems v. National Bank of Washington,* 103 F.R.D. 52, 66 (D.D.C. 1984), as we stated in our prior Order, "[t]he mere fact that business advice is given or solicited does not, however, automatically render the privilege lost: where the advice given is predominantly legal, as opposed to business, in nature the privilege will still attach." *United States v. Davis,* 131 F.R.D. 391, 401 (1990) (citing *Cuno, Inc.,* 121 F.R.D. 198, 204; *North American Mortgage Investors v. First Wisconsin National Bank,* 69 F.R.D. 9, 11 (E.D.Wisc. 1975); *Commonwealth of Puerto Rico v. S.S. Zoe Coloctoni,* 61 F.R.D. 653, 660 (D.P.R.1974); 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 503(a)(1)[01] at 503–221).

■ We have concluded that document number 27 and its duplicate, number 737, are not privileged because the advice given by Mr. Eltzroth was primarily business related, with particular reference to economic matters, and not legal in nature. Even if we were to assume for a moment that the

advice in the memorandum was predominantly legal, we believe that the document would have to be disclosed nonetheless under the crime/fraud exception to the privilege, as it is highly relevant with respect to the basis upon which P. Takis Veliotis, one of the primary tortfeasors, proceeded. Furthermore, we conclude that the requisites of the crime/fraud exception, *see supra* at 15, have been met with respect to this document. Accordingly, this document must be produced.

■ Regarding documents numbered 872 and 874, each contains a transmittal memorandum from Eltzroth to officers of Quincy Shipbuilding commenting on a draft letter to Arthur Andersen & Co, General Dynamics' auditors. Each transmittal memorandum is privileged from disclosure. However, the draft letters to the accounting firm, to which the Eltzroth declaration does not refer, are not, as there is no accountant-client privilege in this Circuit or in this State. *United States v. Bein,* 728 F.2d 107, 112 (2d Cir.1984) (in case involving federal fraud convictions, court stated that "there is no accountant-client privilege in this circuit"), *cert. denied,* 469 U.S. 837, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984); *First Interstate Credit Alliance, Inc. v. Arthur Andersen & Co.,* 150 A.D.2d 291, 292, 541 N.Y.S.2d 433, 434 (1st Dep't 1989) (court, comparing Maryland law with New York law, stated that "New York, it should be noted, has no comparable accountant-client privilege"). Accordingly, General Dynamics must produce the draft letters to the accountants, but may withhold Mr. Eltzroth's transmittal memoranda.

■ As for the DCAA audit and transmittal memorandum discussed in our June 6, 1990 Order, 131 F.R.D. at 396–97, and which the Government produced for our *in camera* review, we conclude that the Government has failed to properly invoke the work-product privilege. We are not told, by affidavit or other competent evidence, who commissioned the audit, nor are we able to discern such from the documents themselves, and thus, we do not know if the documents were indeed gener-

ated in anticipation of litigation, be it civil or criminal. Furthermore, having examined the document ourselves, we do not see any thought processes, conclusions, or opinions of an attorney reflected therein. In addition, we observe that it is difficult to ascertain from and to whom the transmittal memorandum was sent. The Government asserts in its privilege log that the document was prepared by a Kenneth Furukawa, then the Deputy Inspector General for Auditing, to James J. Ford, a MARAD Trial Attorney. *See* General Dynamics' Memorandum in Support of its Third Motion to Compel Production of Documents Withheld by the Government; Attachment A at ¶¶ D-1, D-2; Attachment S (Letter of E. Silverman to D. Bohan, dated February 8, 1988). However, our own examination reveals that there is a notation at the bottom of the memorandum which indicates that only a blind carbon copy was sent to Ford, thus contradicting the Government's statement that the memorandum was addressed to Ford. Finally, even if we assume *arguendo* that the documents could be construed as work product, we find that General Dynamics has a substantial need for the documents in that it should be able to discover the Government's theory of damages and the amounts for which the Government is seeking to hold General Dynamics vicariously liable on account of the conduct of two of the company's former officials. Accordingly, the Government is ordered to produce the DCAA audit documents.

SO ORDERED.