**In re IN–STORE ADVERTISING SECURITIES LITIGATION.**

No. 90 Civ. 5594 (PKL).

United States District Court, S.D. New York.

Sept. 27, 1995.

Wolf Popper Ross Wolf & Jones, New York City (Marian P. Rosner, Robert C. Finkel, of counsel), Milberg Weiss Bershad Hynes & Lerach, New York City (Sharon Levine Mirsky, Janine L. Pollack, of counsel), for Plaintiffs.

Kirkland & Ellis, New York City (William H. Pratt, Frank Holozubiec, of counsel), for the Outside Director Defendants.

Davis, Scott, Weber & Edwards, P.C., New York City (Marc J. Schiller, George A. Salter, of counsel), for Third–Party Defendant KPMG Peat Marwick LLP.

## OPINION AND ORDER

LEISURE, District Judge:

This action arises from an initial public offering of 2.3 million shares of In–Store Advertising Co. ("In–Store") common stock from July 19, 1990 through November 5, 1990 (the "Class Period"). Plaintiffs are representatives of the class of all who purchased In–Store common stock during the Class Period. Defendants are the Director Defendants, *see* Affidavit of Robert C. Finkel, Esq., in Support of Plaintiffs' Motion to Compel Production of Documents ("Finkel Aff.") ¶ 14. Plaintiffs move to compel production of certain documents, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure.

For the reasons stated below, plaintiffs' motion is dismissed in part, granted in part, and denied in part.

## BACKGROUND

On January 14, 1991, plaintiffs commenced their suit; and on January 24, 1991, served a document request on the Director Defendants requesting documents "concerning the time period January 1, 1988 through the date of [the Director Defendants'] final production in response to this Request." Finkel Aff. ¶ 5 and Ex. A at 4 (emphasis omitted).[1] Plaintiffs specifically sought production of "all documents concerning In–Store's accounting practices and policies," and "all documents concerning communications between In–Store and its independent auditors concerning In–Store's accounting policies and practices [and] business operations." *Id.* ¶ 6.

The Director Defendants have produced all documents within their possession, custody, or control, subject to claims of privilege, concerning In–Store created prior to December 31, 1991, and have agreed to produce responsive documents generated during 1992 and 1993 that refer to events occurring from the start of the class period through 1991. The Director Defendants object, however, to the production of documents created after 1993 on the grounds that complying with the re-

---

1. Plaintiffs later altered their document request, demanding all documents created through December 31, 1991, as well as subsequently created documents specifically identified in plaintiffs' document requests. Finkel Aff. ¶ 55.

quest would be overly burdensome and that those documents are irrelevant.

On January 28, 1991, plaintiffs also served a subpoena on KPMG Peat Marwick LLP ("Peat Marwick"), requesting documents arising from Peat Marwick's audit of In–Store's fiscal 1989 financial statements and its work relating to the Offering. *See id.* ¶ 10. Peat Marwick has recently produced its 1990 workpapers. *See* Letter from George A. Salter, Esq., Davis, Scott, Weber & Edwards, counsel for Peat Marwick, to the Honorable Peter K. Leisure, United States District Judge (Aug. 8, 1995).

Additionally, plaintiffs request the production of documents held by Peat Marwick as stakeholder for Emarc, Inc. ("Emarc"), the successor to In–Store. *See* Finkel Aff. at 19, 23. Peat Marwick is holding documents produced to it by Emarc because Kirkland & Ellis, attorneys for the Director Defendants, and Baer Marks & Upham ("Baer Marks"), former counsel for In–Store, have asserted that the documents are attorney-client privileged, or are protected from discovery by the work product doctrine.

Plaintiffs move to compel production of three sets of documents: (1) Peat Marwick's workpapers for its fiscal 1990 audit of In–Store's financial statements ("1990 workpapers"); (2) the Director Defendants' (a) documents regarding In–Store created through December 31, 1991, and (b) documents referring to that period created from 1992 to the present; and (3) documents produced by Emarc, which are presently in Peat Marwick's custody, as to which the Director Defendants and Baer Marks assert privilege or protection from discovery.

## DISCUSSION

The Federal Rules of Civil Procedure provide for broad discovery, and are not meant to focus narrowly on what the parties believe "to be at issue or not at issue in the instant litigation." *In re In–Store Advertising Securities Litigation,* 878 F.Supp. 645, 653 (S.D.N.Y.1995) (Leisure, J.). Rather, discovery parameters are liberal: "[I]nformation sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissi-

ble evidence." Fed.R.Civ.P. 26(b)(1). With these general principles in mind, the Court turns to the individual requests of the plaintiff.

### I. *Peat Marwick's 1990 Workpapers*

Peat Marwick has produced its 1990 workpapers, and therefore plaintiffs' motion to compel production of these documents is moot.

### II. *The Director Defendants' Documents*

The Director Defendants have produced all documents regarding In–Store created through December 31, 1991. The Director Defendants have also agreed to produce documents created before December 31, 1993 that refer to events occurring from the start of the Class Period through 1991. Accordingly, plaintiffs' motion to compel production of these documents is moot.

The Director Defendants refuse to produce documents created after December 31, 1993, that refer to events occurring from the start of the Class Period through 1991 on the grounds that to comply with plaintiffs' request would be burdensome and that these documents are irrelevant. "If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence." *Fletcher v. Atex, Inc.,* 156 F.R.D. 45, 54 (S.D.N.Y.1994). The Director Defendants have not satisfied this requirement because they make only a bare assertion of undue burden without any factual allegations to support it. In addition, the Court finds that documents that refer to events occurring during the class period and shortly thereafter are "reasonably calculated to lead to the discovery of admissible evidence" and are therefore relevant. Fed.R.Civ.P. 26(b)(1). Accordingly, the Director Defendants are ordered to produce all responsive documents to plaintiffs.

### III. *The Emarc Documents*

At issue are roughly 250 documents (the "Emarc Documents") in the possession of Peat Marwick which were produced to it, pursuant to a subpoena relating to this litiga-

tion. The Emarc Documents were produced by Valassis Communications, Inc. ("Valassis"), which received them as part of a transfer of assets from Emarc, the successor to In–Store. The Director Defendants claim that 43 of these documents are protected by the attorney-client privilege, the work product doctrine, and the joint defense doctrine. *See* Privilege Log, *in* Finkel Aff.Ex. BB. Baer Marks objects to production of all of the Emarc Documents on the grounds that documents, which are attorney-client privileged or attorney work product, are "among" the Emarc Documents. *See* Affidavit of Neal S. Barlia in Opposition to Plaintiffs' Motion to Compel Production of Documents ("Barlia Aff.") ¶ 3. The burden is on the objecting party to establish the privilege or doctrine protecting documents from discovery. *See United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir.1989).

### A. The Work Product and Joint Defense Doctrines

The logic behind the work product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes. *Hickman v. Taylor*, 329 U.S. 495, 511, [67 S.Ct. 385, 393–94, 91 L.Ed. 451] (1947); *In the Matter of Grand Jury Subpoenas*, 959 F.2d 1158, 1166–67 (2[ ]d Cir. 1992). An attorney's protected thought processes include preparing legal theories, planning litigation strategies and trial tactics, and sifting through information. *See Hickman*, 329 U.S. at 511, [67 S.Ct. at 393–94.] "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238, [95 S.Ct. 2160, 2170, 45 L.Ed.2d 141] (1975). "[T]he doctrine grants counsel an opportunity to think or prepare a client's case without fear of intrusion by an adversary." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir.1992), *cert. denied*, [—— U.S. ——], 113 S.Ct. 2997, [125 L.Ed.2d 691] (1993). . . . The waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties.

*Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P. (In re Steinhardt Partners, L.P.) ("Steinhardt")*, 9 F.3d 230, 234–35 (2d Cir.1993) (parallel citations omitted). "[T]he work product doctrine may be asserted by either the client or the attorney." *In re Special September 1978 Grand Jury*, 640 F.2d 49, 62 (7th Cir.1980).

■ Although the disclosure of work product to a person in an adversarial relationship with the party asserting work product protection generally waives the protection, *see Steinhardt*, 9 F.3d at 235, the common interest rule preserves the protection where work product is shared between parties pursuing a joint defense strategy. *See Schwimmer*, 892 F.2d at 243. Because the work product doctrine "protects information 'against opposing parties, rather than against all others outside a particular confidential relationship[,]' [c]ounsel may . . . share work product, including ideas, opinions, and legal theories, with those having similar interests in fully preparing litigation against a common adversary." *In re Crazy Eddie Sec. Litig.*, 131 F.R.D. 374, 379 (E.D.N.Y.1990) (Nickerson, J.) (citation omitted).

■ Where work product is shared among parties conducting a joint defense, the unilateral disclosure by one party does not waive the protection for parties that have not voluntarily disclosed their work product. *See John Morrell & Co. v. Local Union 304A, United Food and Commercial Workers*, 913 F.2d 544, 556 (8th Cir.1990) (protection "cannot be waived without the consent of all parties to the defense"), *cert. denied*, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991); *In re Sealed Case*, 676 F.2d 793, 809 (D.C.Cir.1982) (protection is "not automatically waived by any disclosure to a third party").

1. *Baer Marks's Claim of Work Product Protection.*—Rule 26(b)(5) of the Federal Rules of Civil Procedure provides:

When a party withholds information otherwise discoverable under these rules by claiming that it is . . . subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents . . .

not produced ... in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Furthermore, Local Civil Rule 46 requires that a party claiming work product protection for documents provide information as to:

> (1) the type of document; (2) general subject matter of the document; (3) the date of the document; (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other[.]

Local Civil Rule 46(e)(2)(ii)(A). "[F]ailure to comply with the explicit requirements of Rule 46(e) will be considered presumptive evidence that the claim of privilege is without factual or legal foundation." *Grossman v. Schwarz*, 125 F.R.D. 376, 386–87 (S.D.N.Y. 1989); *see also Carte Blanche (Singapore) v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y.1990) (Leisure, J.) ("[T]he importance of local rules should not be taken so lightly. The local rules supplement the federal rules governing civil proceedings. Accordingly, their importance should not be diminished by skirting their application when the results prove harsh to a party." (citation omitted)).

Baer Marks claims that the Emarc Documents include "documents constituting, reflecting, containing and/or referring to privileged and confidential communications with its client as well as factual and legal issues relating to the lawsuits and certain related regulatory matters, *many of which* include[ ] the attorneys' mental impressions and opinions concerning such matters." Barlia Aff. ¶ 3. Such documents are "among those that had been produced by [Lord, Day & Lord, Barrett Smith ("Lord Day") ]" to Peat Marwick's counsel. *Id.* ¶ 22.

Plaintiffs have argued that Baer Marks's failure to comply with Rule 46 by providing a privilege log waives their claims of work product protection. *See* Plaintiffs' Reply Brief in Further Support of Motion to Compel ("Plaintiffs' Reply") at 15–17. Baer Marks failure, though not to be condoned, is not flagrant enough to warrant full production of documents that likely contain some attorney opinion work product.[2] *See Trzeciak v. Apple Computers, Inc.*, 1995 WL 20329, at *3 (S.D.N.Y.1995) (ordering defendant to provide privilege log that complies with Local Rule 46 rather than ordering production of documents); *Grossman*, 125 F.R.D. at 386, 390 (same); *cf., e.g., John Labatt Ltd. v. Molson Breweries*, 1995 WL 23603, at *1 (S.D.N.Y.1995) (privilege log provided that omitted some withheld documents); *Allstate Life Insurance Co. v. First Trust Nat'l Assoc.*, 1993 WL 138844, at *3 (S.D.N.Y.1993) (party resisting disclosure had "refused, quite flagrantly, to make any meaningful compliance until faced with sanctions"); *Kansas–Nebraska Natural Gas Co. v. Marathon Oil Co.*, 109 F.R.D. 12, 24–25 (D.Neb.1985) ("Marathon did not identify them as being withheld, but made only a general claim of privilege."). The Court notes that plaintiffs first argued that there had been a waiver specifically by Rule 46 non-compliance in its reply memorandum. Had it placed this argument in its original moving papers, Baer Marks would have had an opportunity to comply with Rule 46 or waive its claims. Instead, no demand for a list complying with Local Rule 46 was made until Baer Marks had filed its opposition to the motion. In addition, the documents at issue are identified and their existence is well known to all of the parties. Under the circumstances, the Court does not find that the protections have been waived by Baer Marks's failure to submit a privilege log conforming to the applicable rules.

However, the Court orders Baer Marks to serve a privilege log conforming to all applicable rules on or before October 13, 1995 or

**2.** *See, e.g.,* Lord Day & Lord, Barrett Smith, Privilege List at 6 li. 1, *in* Affidavit of Frank Holozubiec, Esq., in Opposition to Plaintiffs' Motion to Compel Production of Documents Ex. 5; Kirkland & Ellis, In–Store Advertising E–Marc Documents Index at 8 li. 23, *in* Finkel Aff.Ex. Z (both listing memorandum prepared by Baer Marks attorney regarding telephone conversation with potential witnesses).

waive all privileges or protections of the Emarc Documents.

██ 2. The *Director Defendants' Claim of Work Product Protection.*—The Court finds that the Director Defendants have carried their burden of establishing the work product protection for the 43 documents listed in their privilege log. First, the documents are work product because they would reveal the mental processes of the attorneys in conducting this litigation. Second, the work product protection was not waived by the transfer of documents to O'Sullivan, Graev & Karabell ("O'Sullivan") by the Director Defendants because that transfer was pursuant to a joint defense agreement whereby the documents were to be shared in order to facilitate a joint defense strategy among the signatories but otherwise kept confidential. Third, the transfer of the documents to a third party (Lord Day) by O'Sullivan was in violation of the joint defense agreement and without the consent of the Director Defendants. The subsequent transfer of the documents by Lord Day to Peat Marwick likewise was without the Director Defendants' consent. Therefore, the Director Defendants have not waived the work product protection as to the documents listed on the Director Defendants' privilege log, *see* Finkel Aff.Ex. BB.

### B. *The Attorney–Client Privilege*

██ The attorney-client privilege serves to protect confidential communications between the client and the attorney. "Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential." *von Bulow v. von Bulow,* 828 F.2d 94, 103 (2d Cir.1987). In contrast to the work product protection, "the privilege belongs solely to the client." *Id.* at 100. Where the client is a corporation, the power to "invok[e] or waiv[e] a corporation's privileges is an incident of control of the corporation." *In re Grand Jury Subpoenas 89–3 and 89–4,* 734 F.Supp. 1207, 1211 (E.D.Va.) (interpreting *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343,

105 S.Ct. 1986, 85 L.Ed.2d 372 (1985)), *aff'd in relevant part,* 902 F.2d 244 (4th Cir.1990). Therefore, a change in management or a change in control of the corporation does not effect a disclosure such that the privileged is waived. *See Weintraub,* 471 U.S. at 349, 105 S.Ct. at 1991. However, "[a] transfer of assets, without more, is not sufficient to effect a transfer of the privileges; control of the entity possessing the privileges must also pass for the privileges to pass." *In re Grand Jury Subpoenas 89–3 and 89–4,* 734 F.Supp. at 1211 n. 3. Therefore, where confidential attorney-client communications are transferred from a corporation selling assets to the corporation buying the assets, the privilege is waived as to those communications.[3]

██ 1. *Baer Marks's Claim of Attorney–Client Privilege.*—Even though Baer Marks has not yet carried its burden of complying with the applicable rules and demonstrating the validity of its objections to discovery, the Court finds that any attorney-client privilege it might claim has been waived by its client. Baer Marks represented In–Store in this action until 1993 when O'Sullivan was substituted as counsel for In–Store. *See* Barlia Aff. ¶ 2. In–Store was reorganized in bankruptcy proceedings and was succeeded by Emarc. The attorney-client privilege was controlled at this point by Emarc, *see Weintraub,* 471 U.S. at 349, 354, 105 S.Ct. at 1991, 1993–94, and Emarc therefore had the power to assert or waive the privilege, *see von Bulow,* 828 F.2d at 100. When those communications were transferred to Valassis in connection with a sale of assets by Emarc to Valassis, Emarc thereby waived any privilege still in effect as to those communications. *See In re Grand Jury Subpoenas 89–3 and 89–4,* 734 F.Supp. at 1211 n. 3. The former attorney of In–Store, Baer Marks, cannot claim the privilege that has been waived by the successor to its former client.

2. *The Director Defendants' Claim of Attorney–Client Privilege.*—Though the Director Defendants asserted attorney-client privilege as to each of the 43 documents listed in its

---

**3.** "[T]here exists no reason ... to broaden the waiver beyond those matters actually revealed."

*von Bulow,* 828 F.2d at 103.

privilege log, they did not claim the privilege in their opposition to plaintiffs' motion to compel. The Court therefore finds that this claim has been waived. In any event, because the Court has found the documents protected by the work product doctrine, the Court need not reach the claim of attorney-client privilege.

### C. The Crime–Fraud Exception to the Attorney–Client Privilege and Work Product Doctrine

 Plaintiffs argue that even if the Emarc Documents would otherwise be protected from disclosure, those documents were created during the course of an ongoing fraud and so are discoverable by virtue of the crime-fraud exception to the attorney-client privilege and work product doctrine. *See* Plaintiffs' Reply at 20.

> The crime-fraud exception strips the privilege from attorney-client communications that "relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct."
>
> . . . .
>
> ... [A] party seeking to overcome the attorney-client privilege with the crime-fraud exception must show that there is "probable cause to believe that a crime or fraud ha[s] been committed and that the communications were in furtherance thereof."

*John Doe, Inc. v. United States*, 13 F.3d 633, 636–37 (2d Cir.1994) (alteration in original) (quoting *In re Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038–39 (2d Cir.1984)). The exception applies as well to the work product doctrine. *See Cherry v. Hungarian Foreign Trade Bank, Ltd.*, 136 F.R.D. 369, 372 (S.D.N.Y.1991). However, "the crime[-]fraud exception cannot be successfully invoked merely upon showing that the client communicated with counsel while the client was engaged in criminal or fraudulent activity." *United States v. Davis*, 132 F.R.D. 12, 15 (S.D.N.Y.1990); *see In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986). The party seeking disclosure must show not simply probable cause to believe that fraud has been committed, but that there is probable cause to be-

lieve that the communication between attorney and client or the work product produced by the attorney was *in furtherance of the fraud. See Davis*, 132 F.R.D. at 15.

 Plaintiffs here have failed to meet this burden. Plaintiffs point only to evidence of In–Store's fraud, and "maintain that defendants had actual knowledge of In–Store's accounting fraud.... [and therefore] [d]efendants' participation in that 'ongoing fraud' would vitiate [any] privilege." Plaintiffs' Reply at 20. Plaintiffs have not alleged facts sufficient to invoke the crime-fraud exception because they have not alleged that any communications or work product were *in furtherance* of the fraud, they have only alleged that In–Store committed fraud.

Plaintiffs and defendants argue that the court should at least conduct an *in camera* review of the disputed documents to determine whether they are properly discoverable. "Such review is not, however, to be routinely undertaken ... as a substitute for a party's submission of an adequate record" in support or in opposition to privilege claims. *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y.1993). Rather,

> before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability.

*United States v. Zolin*, 491 U.S. 554, 574, 109 S.Ct. 2619, 2632, 105 L.Ed.2d 469 (1989). As noted above, plaintiffs have produced no evidence that communications were made or work product produced in furtherance of an ongoing or future fraud; they have only produced evidence of a fraud by In–Store. This evidence is insufficient to support a reasonable belief that *in camera* review may yield evidence of communications to attorneys in furtherance of the fraud or work product produced by attorneys in furtherance of the fraud. Because plaintiffs have not met the *Zolin* test, the Court finds that *in camera* review is not appropriate.

In any event, the Court exercises its discretion to decline the invitation of the parties

to engage in *in camera* review. *See id.* at 572, 109 S.Ct. at 2631 ("Once this threshold showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court.").

## CONCLUSION

Plaintiffs' motion to compel production of Peat Marwick's 1990 workpapers is HEREBY DISMISSED as moot. Plaintiffs' motion to compel production of responsive documents of the Director Defendants is HEREBY DISMISSED as moot. Plaintiffs' motion to compel production of responsive documents of the Director Defendants created after December 31, 1993 is HEREBY GRANTED. Plaintiffs' motion to compel production of the 43 Emarc Documents listed on the Director Defendants' privilege log is HEREBY DENIED. Plaintiffs' motion to produce the remainder of the Emarc Documents is HEREBY DENIED as to those documents for which Baer Marks produces a privilege log conforming to the applicable rules of procedure. Baer Marks is HEREBY ORDERED to serve its conforming privilege log on or before October 13, 1995 or waive all privileges or protections of the Emarc Documents.

**SO ORDERED.**